R. C. PAXTON, Plaintiff-Appellant,

v.

John C. WEAVER et al., etc.,
Defendants-Appellees.

A. C. BAGWELL, Plaintiff-Appellant,

v.

John C. WEAVER et al., etc.,
Defendants-Appellees.

Irby L. VANCE, Jr., Plaintiff-Appellant,

v.

John C. WEAVER et al., etc.,
Defendants-Appellees.

Robert C. SKELTON, Plaintiff-Appellant,

v.

John C. WEAVER et al., etc.,
Defendants-Appellees.

James L. GREEN, Plaintiff-Appellant,

v.

John C. WEAVER et al., etc.,
Defendants-Appellees.

Harold F. DORROH, Plaintiff-Appellant,

v.

John C. WEAVER et al., etc.,
Defendants-Appellees.

Nos. 75–2459 to 75–2464.

United States Court of Appeals,
Fifth Circuit.

June 10, 1977.

G. Jyles Eaves, Louisville, Miss., for plaintiffs-appellants.

Grady F. Tollison, Jr., Robert C. Khayat, Oxford, Miss., for defendants-appellees.

Before GEWIN, AINSWORTH and SIMPSON, Circuit Judges.

GEWIN, Circuit Judge:

Appellants in this consolidated action, all cotton farmers and residents of Mississippi, each filed suit in the chancery court of that state asserting claims arising from certain events that allegedly occurred in 1973. Appellees, named as defendants in each state suit, consist of three residents of Tennessee doing business as John C. Weaver and Sons ("the Tennessee partnership") and two residents of Mississippi, James J. Smith, doing business as Loper and Smith Cotton Company ("the Mississippi broker") and George D. Nolen, one of Smith's employees. Appellees sought removal of the cases to the federal district court for the Northern District of Mississippi pursuant to 28 U.S.C. § 1441(c),[1] which appellants resisted with motions to remand. The Tennessee partnership filed

1. (c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise nonremovable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

counterclaims based on breach of contract. The district court denied the motions for remand, and after substantial discovery granted appellees' motions for summary judgment in their favor on the claims and counterclaims. We reverse.

■ We need refer only to the allegations of appellants' pleadings, since a plaintiff's state court pleading controls removability. *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 14, 71 S.Ct. 534, 540, 95 L.Ed. 702, 709 (1951); *Crosby v. Paul Hardeman, Inc.*, 414 F.2d 1, 3 (8th Cir. 1969). Appellants' "Bills of Complaint" were similar and alleged that the Tennessee partnership, through the Mississippi broker and its employee Nolen, agreed on or about March 14, 1973, to purchase for 33 cents per pound cotton grown on certain of appellants' acreage. The complaints further alleged that appellees sought appellants' quick agreement to the sale knowing, as appellants did not, that the price of cotton would soon increase significantly. In addition, appellees allegedly prevailed upon appellants to sign the contracts in blank, with a subsequent "redrafting" in the buyer's favor, and the Mississippi broker made sure that the sellers' signatures were witnessed while the buyer's were not, in order to give the buyer a good defense for failure to perform. Finally, the complaints alleged that appellees, and particularly the Mississippi broker and its employee, interfered with appellants' efforts in 1973 to sell their cotton crops and to obtain credit. Because of appellees' alleged misrepresentations and "high-handed" methods, appellants sought recision of the contracts, an injunction against attempted enforcement of the contracts, an injunction against further interference with appellants' business relations, and compensatory and punitive damages from the Tennessee partnership, the Mississippi broker, and employee Nolen "jointly and severally."

The district court denied the motions to remand, reasoning that a separate and independent cause of action was stated between diverse parties. The court concluded that the complaint of each appellant stated two causes of action: one for recision against the Tennessee partnership based on the agent's alleged misrepresentations, and one for damages against the Mississippi broker based on the allegations of tortious interference with appellants' businesses. Citing its previous opinion in *Chipman v. Lollar*, 304 F.Supp. 440, 445 (N.D.Miss.1969), the court stated that the cause of action for contract recision involved the contracting parties only, as it was the court's view that under Mississippi law where the identity of the principal is fully disclosed an agent has no liability on a contract between the principal and a third party. As to the independence of the contract recision and tortious interference claims, the court concluded:

I do not believe in Mississippi, as of this time, that you can join a suit in contract and a suit in tort in the same suit. So it is my opinion, for that reason, that they are separate, independent, and distinct causes of action.

■ The propriety of removal in a case such as this turns on the statute and the *Finn* case, *supra*. Prior to the 1948 revision of the Judicial Code that part of a lawsuit involving a "separable controversy between citizens of different states" could be removed from state to federal court. *See generally* 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3724 (1976). In order to reduce the number of cases removable from state courts Congress amended the Judicial Code to allow removal only when the plaintiff states against a resident of another state a claim "separate and independent" from any claim stated against a resident of the plaintiff's state. *American Fire and Casualty Co. v. Finn, supra*, 341 U.S. at 10, 71 S.Ct. at 538, 95 L.Ed. at 706.

In *Finn* a Texan sued in state court two foreign insurance companies and their Texas agent. The plaintiff sought recovery for a fire loss, alleging that the local agent had agreed to secure fire insurance on her property from one of the insurance companies. Her theory was that either one of the companies was liable for breach of an insurance

contract or the agent was liable for failing to keep her property insured. The foreign insurance companies removed the case to federal court, relying on section 1441(c). After judgment was entered against one of the insurance companies, that party sought to vacate the judgment on the ground of improper removal. This court affirmed the judgment, 181 F.2d 845 (5th Cir. 1950), but the Supreme Court reversed. The Court noted that a "separable controversy" under the prior statute "was interpreted as any possible separate suit that a litigant might properly bring in a federal court." *Id.* at 11, 71 S.Ct. at 538, 95 L.Ed. at 707. The Court noted the significance of the word "independent" in the new statute: "The addition of the word 'independent' gives emphasis to congressional intention to require a more *complete disassociation* between the federally cognizable proceedings and those cognizable only in state courts before allowing removal." *Id.* at 12, 71 S.Ct. at 539, 95 L.Ed. at 707 (emphasis added). The Court then established the proper analysis:

> . . . [W]e conclude that where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c). *Id.* at 14, 71 S.Ct. at 540, 95 L.Ed. at 708–09 (footnote omitted).

In applying that test in *Finn*, the Court concluded that there was only a single wrong—the failure to pay compensation for the loss on the property.

 Appellees contend that the district court was correct in concluding that the

claim for contract recision is independent of the claim for tortious interference. We need not pass on that contention, because we agree with appellants that their complaints alleged claims against both the Tennessee partnership and Mississippi broker based on the contract formation. The complaints reasonably must be read to state claims against the broker and the buyer for compensatory and punitive damages based on the broker's alleged misrepresentations as well as for recision against the buyer.

Assuming that the district court was correct in concluding that a cause of action for recision exists exclusively between the sellers and buyer, that does not necessarily absolve the broker of liability for its alleged misrepresentations in the formation of contracts for its principal. The Restatement (Second) of Agency § 348 (1958) states that:

> An agent who fraudulently makes representations, uses duress, or knowingly assists in the commission of tortious fraud or duress by his principal or by others is subject to liability in tort to the injured person although the fraud or duress occurs in a transaction on behalf of the principal.[2]

Indeed, the few courts that have passed on the question hold that where a party has rescinded a transaction with the principal because he was induced by the agent's fraud, he still can enforce a claim for damages against the fraudulent agent. *Nash v. Minnesota Title Insurance & Trust Co.*, 163 Mass. 574, 40 N.E. 1039, 1041 (1895); *Schelske v. Smith*, 55 S.D. 502, 226 N.W. 734 (1929); Restatement (Second) of Agency, Reporter's Notes § 348 at 570 (Appendix); Restatement of Restitution § 147(1), Com-

---

**2.** We have not been cited to, and have not found any Mississippi law to the contrary on facts similar to those in the instant case. It is not our task to determine exactly how Mississippi courts would pass on appellants' various theories of liability. We only need to decide whether, under a liberal review of Mississippi law or what it might be, arguable grounds exist for recovery under appellants' theories. *See Bell v. Preferred Life Assurance Society*, 320 U.S. 238, 241–42, 64 S.Ct. 5, 6, 88 L.Ed. 15, 18–19 (1943); *Smith v. Southern Pacific Co.*, 187 F.2d 397, 401 (9th Cir.), *cert. denied*, 342 U.S. 823, 72 S.Ct. 42, 96 L.Ed. 622 (1951);

*Guess v. Kellogg Switchboard & Supply Company*, 143 F.Supp. 807, 808 (N.D.Cal.1956). Taking the quoted Restatement section as the general rule, we have no doubt that appellants arguably have stated a claim for damages against the broker based on alleged misrepresentations. Moreover, because the broker could well be liable upon proof of misrepresentation, appellants' joinder of a claim against the Mississippi residents cannot be termed fraudulent or a sham. *Sessions v. Chrysler Corporation*, 517 F.2d 759, 760 (9th Cir. 1975); *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176–77 (5th Cir. 1968).

ment (a) to subsection (1) (1937). Consequently, we conclude that appellants sought relief arising out of a series of connected transactions, though in different forms, from both the Tennessee partnership buyer and the Mississippi broker based on misrepresentations allegedly made by the latter.[3]

Those claims are not separate and independent causes of action under *Finn*. They both are associated with a "single wrong" to each appellant—inducement to execute a contract by misrepresentations. 341 U.S. at 14, 71 S.Ct. at 540, 95 L.Ed. at 708. Taking *only* the allegations relating to contract formation and quoting the Supreme Court, we apply the *Finn* test:

> The facts in each portion of the complaint involve [the Mississippi broker], the damage comes from a single incident. The allegations in which [the broker] is a defendant involve substantially the same facts and transactions as do the allegations in the . . . complaint against

[the Tennessee buyer]. It cannot be said that there are separate and independent claims for relief as § 1441(c) requires. Therefore, we conclude there was no right to removal. *Id.* at 16, 71 S.Ct. at 541, 95 L.Ed. at 709–10.[4]

■ The district court thought it significant that appellants' claims sound in tort as well as contract and that Mississippi procedure would not allow joinder of such claims. Appellants suggest here that in fact tort and contract claims could be joined in one action in a Mississippi court of equity, where this suit was brought, the nonjoinder rule being applicable only in courts of law. But we need not decide niceties of Mississippi procedure, since although state substantive law determines the nature of rights and liabilities asserted, construction of the removal statute is a question of federal law. *Grubbs v. General Electric Corp.*, 405 U.S. 699, 705, 92 S.Ct. 1344, 1348, 31 L.Ed.2d 612, 619 (1972).[5] Federal courts

---

**3.** Appellees urge that appellants could have only a claim for relief in the form of recision because they failed to perform the contract. The fact that appellants allegedly sold their cotton to others in the fall of 1973 may not necessarily eliminate relief in the form of some damages. First, appellees' assertion that appellants sold their cotton at a high price to others does not appear from the complaints, and absent concealment of a federal question or fraudulent joinder of parties, removability is entirely dependent upon the course of pleading employed by the plaintiffs. *American Fire & Casualty Co. v. Finn, supra*, at 14, 71 S.Ct. at 540, 95 L.Ed. at 709; *Great Northern Ry. v. Alexander*, 246 U.S. 276, 282, 38 S.Ct. 237, 239, 62 L.Ed. 713, 716 (1918); *Greenshields v. Warren Petroleum Corp.*, 248 F.2d 61, 65 (10th Cir.), *cert. denied*, 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 262 (1957); *Edwards v. E. I. DuPont de Nemours & Co.*, 183 F.2d 165, 168 (5th Cir. 1950). Second, even if appellants sold their cotton at a higher price than that provided for in the contract, they may still have suffered economic injury because they were purportedly bound by contracts with the Tennessee partnership. The determination of what damages, if any, appellants suffered is a matter for further development during discovery or at trial. Finally, appellants sought to recover punitive as well as compensatory damages. Perhaps Mississippi courts would allow recovery of punitive damages from the *agent* upon proof of egregious conduct in soliciting the contracts without proof of substantial pecuniary injury.

*Cf. Bryan Construction Company v. Thad Ryan Cadillac, Inc.*, 300 So.2d 444, 449 (Miss.1974); *Sovereign Camp, W.O.W. v. Boykin*, 182 Miss. 605, 181 So. 741, 742 (1938). *See also Bell v. Preferred Life Assurance Society, supra*, 320 U.S. at 240, 64 S.Ct. at 6, 88 L.Ed. at 18 (allegations as to punitive damages have as much bearing on questions of federal jurisdiction as allegations as to compensatory damages).

**4.** As noted above, we look only to appellants' complaints to determine the propriety of removal. Those complaints alleged that the Mississippi broker was the agent of the Tennessee partnership. Appellees contend here that the broker was not the partnership's agent but instead may have been appellants' agent. Acceptance of that contention does not change our analysis except to further support our conclusion. If the broker was not the partnership's agent, it is clear that appellants could assert claims against appellees on various contract, tort, and agency theories; but those claims would still be too closely related to be considered "separate and independent." There would be the same single wrong to appellants involving "an interlocked series of transactions" that relate to contract formation.

**5.** *See generally* 1A J. Moore, Federal Practice ¶ 0.163[4–2] (2d ed. 1974). As this court stated in *Edwards v. E. I. DuPont de Nemours & Co., supra*, at 167–68:

> We take the case as stated by appellant. We look to the substantive law of Georgia to

must apply the separate and independent test so as to carry out the intent to restrict removal. *Greenshields v. Warren Petroleum Corp., supra* (all doubts arising from the pleadings should be resolved in favor of the retention of state court jurisdiction). Accordingly, numerous courts have held that the assertion of contract and tort claims does not necessarily yield separate and independent causes of action.[6] That Mississippi procedure may not allow joinder of contract and tort claims is irrelevant where, as is true of the contract formation allegations here, the claims are based on a single wrong to the plaintiff. To make state procedural rules determinative would be to add undue confusion to a field that already "luxuriates in a riotous uncertainty." *Harper v. Sonnabend*, 182 F.Supp. 594, 595 (S.D.N.Y.1960).

Appellees contend that the removal question is moot because of the Tennessee partnership's assertion of counterclaims for breach of contract, after appellees filed their petitions for removal, against the Mississippi farmers involving greater than $10,000 and allegedly arising under the Commodity Exchange Act, 7 U.S.C § 6(c). They argue that where a district court would have had original jurisdiction over a particular claim irregularities in removal cannot defeat jurisdiction, citing *Grubbs v. General Electric Credit Corporation, supra.* In that case the credit corporation sued Grubbs in Texas state court. Grubbs answered and counterclaimed for damages against it and General Electric Co. In his second amended answer Grubbs sought court determination of priorities among judgment liens, adding several creditors including the United States as cross-defendants. The United States petitioned for removal to district court; at no time did the credit corporation move for remand or otherwise object to removal. The court undertook consideration of all claims in the case, and the dissatisfied credit corporation appealed to this court. The court of appeals on its own motion decided that removal had been improper and that the case should be remanded to state court. 447 F.2d 286 (5th Cir. 1971). The Supreme Court reversed.

Read broadly, *Grubbs* may say that if under any view the district court could have had original jurisdiction over a particular claim, improper removal is not cause for vacating the judgment on that claim. But *Grubbs* should not be read so broadly. Language throughout the opinion limits its scope. For example, the Court stated:

> Longstanding decisions of this Court make clear, however, that where after removal a case is tried on the merits *without objection* and the federal court enters judgment, the issue in subsequent proceedings on appeal is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court. 405 U.S. at 702, 92 S.Ct. at 1347, 31 L.Ed.2d at 617 (emphasis added).

---

ascertain whether a legal claim was stated against either or both of the appellees, and whether a separate and independent claim or cause of action was alleged against the non-resident defendant. Georgia decisions upon procedure may be persuasive, [citations omitted], but in procedural matters we are controlled by [federal law]. . . . Aided thus, we look to the federal statutes as construed by federal decisions to determine whether the case is removable in whole or in part, all questions of joinder, non-joinder, and misjoinder being for the federal court.

**6.** *See, e. g., Frontier Enterprises, Inc. v. ICA Corporation*, 319 F.Supp. 1156, 1159–60 (D.Minn.1970), "A single wrong is not parlayed into separate and independent causes of action by multiplying the legal theories upon which relief is sought or by multiplying defendants against whom a remedy is sought for the same injury."); *Walls, Inc. v. Maryland Casualty Co.*, 315 F.Supp. 764, 767–68 (D.Kan.1970) (claims arising from contract provision as well as from common law); *Gustaveson, Inc. v. Graybar Electric Company, Inc.*, 222 F.Supp. 473, 473–74 (W.D.Mo.1963) (claims for breach of contract and for tortiously inducing the breach); *Ramapo Rockland Corporation v. Merchants & Businessmen's Mutual Insurance Co.*, 156 F.Supp. 311, 312 (S.D.N.Y.1957) (claims for breach of contract, reformation of contract, tortious inducement of breach, and conspiracy to withhold issued insurance policies). *See also Pate v. Standard Dredging Corp.*, 193 F.2d 498, 501–02 (5th Cir. 1952) (claims based on negligence under the Jones Act and on unseaworthiness under maritime law).

The courts of appeals that have considered the question hold that *Grubbs* turns on the failure of a party to object to the removal. *Riggs v. Island Creek Coal Company*, 542 F.2d 339, 343 (6th Cir. 1976); *La Chemise Lacoste v. Alligator Company, Inc.*, 506 F.2d 339, 342 & n. 1 (3d Cir. 1974), *cert. denied*, 421 U.S. 937, 95 S.Ct. 1666, 44 L.Ed.2d 94 (1975); *Seneca Nursing Home v. Kansas State Board of Social Welfare*, 490 F.2d 1324, 1327–28 (10th Cir.), *cert. denied*, 419 U.S. 841, 95 S.Ct. 72, 42 L.Ed.2d 69 (1974). *Grubbs* is hardly a surprising decision when it is thusly interpreted. It is hornbook law that federal courts are courts of limited jurisdiction and that they are obliged to notice want of jurisdiction on their own motion. C. Wright, Federal Courts § 7 (3d ed. 1976); F.R.C.P. 12(h)(3). As Professor Wright has noted, such a harsh rule cannot be defended as a sensible regulation of procedure, and can be justified only by the delicate problems of federal-state relations, reflected in the limitations of Article III of the Constitution. C. Wright, *supra*. Where the district court would have had jurisdiction in the Article III sense over a particular claim had suit been brought in the first instance upon it, the constitutional restrictions are satisfied. If in such a case the suit was first brought before the court by removal, a party cannot challenge the propriety of removal on appeal unless he has objected at the district court level. That is no more than simply applying the rule that objections to procedure are deemed to be waived unless brought to the district court's attention. *Martinez v. Mathews*, 544 F.2d 1233, 1237 (5th Cir. 1976); *Melendez v. Singer-Friden Corp.*, 529 F.2d 321, 324 (10th Cir. 1976); *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 286 (5th Cir. 1975); *Modave v. Long*

*Island Jewish Medical Center*, 501 F.2d 1065, 1072 (2d Cir. 1974).

In the instant case it is perhaps true that the Tennessee appellees might have sued appellants in federal district court for breach of contract because of diversity (28 U.S.C § 1332) or because the claims "arose under" a federal statute (*id.* § 1331). But they did not invoke federal jurisdiction in such a suit.[7] Rather they filed petitions for removal of appellants' actions and two weeks later asserted the breach of contract claims as counterclaims. Appellants filed suits in Mississippi state court and were entitled to that forum unless the cases were properly removed. The removal was improper, and appellants not only promptly moved for remand, but renewed those motions after substantial discovery. With the issue of removal thus preserved, *Grubbs* is inapplicable. Assertion of appellees' counterclaims did not cure the defect or render moot the issue of removal. Therefore the district court never properly obtained jurisdiction over the claims or counterclaims.

The judgment of the district court is reversed and the cases remanded with directions to vacate the judgment and remand the cases to the Chancery Court of Lowndes County, Mississippi.

REVERSED and REMANDED.

---

7. Apparently the Tennessee partner filed suit in federal district court against appellant Paxton for breach of contract before appellants filed their state actions. It appears that Paxton's claim for recision would have been a compulsory counterclaim. F.R.C.P. 13(a). But appellees did not seek to maintain the federal jurisdiction they had invoked. After the court denied appellants' motions to remand, appellees answered the complaints and counterclaimed for breach of contract; the separate suit against Paxton was then dismissed without prejudice. The claim for breach of contract against Paxton is therefore dependent, as are the rest of such claims, on the propriety of removal.